**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LOUISIANA REALTY DEVELOPMENT, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-656** |
| **AXIS SURPLUS INS. CO.** | **SECTION "O"** |

# ORDER AND REASONS

Plaintiff Louisiana Realty Development, LLC ("Louisiana Realty") brings the instant lawsuit against its insurer, Defendant AXIS Surplus Ins. Co. ("AXIS"), for AXIS's failure to remit payment of settlement proceeds to Louisiana Realty within 30 days of settling Louisiana Realty's Hurricane-Ida claims. Because of the delay, according to Louisiana Realty, AXIS must pay a penalty of 50% of the amount due under the settlement. AXIS moves under Fed. R. Civ. P. 12(b)(6)[1] to dismiss this lawsuit for failing to state a claim. Louisiana Realty opposes[2] and AXIS replied.[3] For the reasons that follow, the motion to dismiss is **GRANTED**.

## I. BACKGROUND

The pertinent facts are not materially in dispute. According to Louisiana Realty's first amended complaint, AXIS insured eight real properties belonging to Louisiana Realty in Houma, Louisiana.[4] The properties were damaged in August 2021 due to Hurricane Ida.[5] According to Louisiana Realty, the properties sustained

[1] ECF No. 18.
[2] ECF No. 21.
[3] ECF No. 25.
[4] ECF No. 17 ¶ 3.
[5] *Id.* ¶ 5.

"catastrophic loss."[6] Two years later, Louisiana Realty sued AXIS in state court for failing to pay its insurance claims.[7] AXIS removed the case to federal court.[8]

On November 19, 2024, counsel for AXIS emailed counsel for Louisiana Realty an offer to settle the lawsuit for $450,000.[9] That same day, counsel for Louisiana Realty emailed its acceptance of the settlement offer.[10] Also that day, Louisiana Realty provided AXIS with instructions on how to remit the settlement proceeds.[11]

On December 27, 2024, when it had not received payment, counsel for Louisiana Realty "forwarded communication" to AXIS inquiring about the status of the settlement funds.[12] Seven minutes later, Louisiana Realty received a FedEx package from AXIS containing the settlement checks.[13] AXIS had mailed the checks the day before.[14]

Louisiana Realty filed suit in state court alleging that AXIS's failure to remit payment within 30 days of the written agreement entitles Louisiana Realty to a penalty of 50% of the settlement amount, along with reasonable fees, interest, and costs.[15] AXIS removed the case—the instant case—to federal court.[16] AXIS also filed a motion[17] to dismiss the initial state court petition under Rule 12(b)(6). After oral

---

[6] *Id.* ¶¶ 6, 15, 20.
[7] *Id.* ¶ 6.
[8] *Id.* ¶ 7. That case was *Louisiana Realty Development, LLC v. Axis Surplus Insurance*, 23-CV-6594, also assigned to this section of Court.
[9] *Id.* ¶ 9.
[10] *Id.* ¶ 10.
[11] *Id.* ¶ 11.
[12] *Id.* ¶ 12.
[13] *Id.* ¶ 13.
[14] *Id.* ¶ 14.
[15] ECF No. 1-1.
[16] ECF No. 1.
[17] ECF No. 5.

argument on the motion, the Court ordered Louisiana Realty to amend its complaint to address issues raised in the briefing and denied without prejudice AXIS's first motion to dismiss.[18]

Louisiana Realty filed a first amended complaint[19] seeking the same relief—50% of the settlement amount along with reasonable attorney fees, interest, and costs. Louisiana Realty's claim relies on two statutes. First, Louisiana Realty claims AXIS violated La. R.S. § 22:1892(I)(2)(b), triggering the penalty provisions of La. R.S. § 22:1892.2.[20] Second, Louisiana Realty alleges AXIS violated La. R.S. § 22:1892(B)(1)(a) and is subject to the penalty provisions in that subsection.[21]

AXIS now moves[22] to dismiss the first amended complaint, claiming neither alleged statutory scheme affords Louisiana Realty the relief it seeks.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544,

[18] ECF No. 16.
[19] ECF No. 17.
[20] *Id.* ¶¶ 15–21.
[21] *Id.* ¶¶ 22–25.
[22] ECF No. 18.

555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (cleaned up).

The first amended complaint alleges this Court has diversity jurisdiction over this case.[23] As such, the Court applies state substantive law to its Rule 12(b)(6) analysis. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

## III. ANALYSIS

Louisiana Realty invokes two statutory schemes in support of its request for a 50% penalty, attorney fees, interest, and costs. AXIS challenges the plausibility of the plaintiff's reliance on each scheme. Assessing AXIS's motion requires a close review

[23] ECF No. 17 ¶ 2.

of § 22:1892 and § 22:1892.2. In doing so, and relying on the well-pled allegations in the amended complaint, the Court finds that neither statute offers Louisiana Realty grounds for relief.

**A. § 22:1892.2, as triggered by a violation of § 22:1892(I)(2)(b), does not apply because AXIS paid the settlement amount within 60 days of receiving sufficient notice of payment due.**

In 2024, Louisiana revised its bad-faith penalties statutes. After Hurricane Ida in 2021, the Louisiana legislature amended the laws applicable to insurance claims. *See* La. Act 3 of 2024 (SB 323) (effective July 1, 2024). Specifically, it added La. R.S. § 22:1892.2, revised La. R.S. § 22:1892, and repealed La. R.S. § 22:1973, adding the enumerated duties of § 22:1973 to § 22:1892(I). *Id. See R & R Holdings Unlimited LLC v. Scottsdale Ins. Co*, No. 3:25-CV-00992, 2026 WL 2632346, at n.18 (W.D. La. Aug. 3, 2026). The parties agree that the post-July 1, 2024 version of the statutes applies.

Our analytical starting point is the newly-enacted § 22:1892(I)(1)(a), which describes duties an insurer owes to an insured: a "duty of good faith and fair dealing," a duty to "adjust claims fairly and promptly," and an obligation "to make a reasonable effort" to settle claims with the insured. § 22:1892(I)(1)(a). Certain acts constitute a breach of these duties. § 22:1892(I)(2). One such act is when an insurer "fail[s] to pay a settlement within thirty days after an agreement is reduced to writing." § 22:1892(I)(2)(b). Here, AXIS does not dispute that it breached its duty by failing to pay its legal settlement to Louisiana Realty within 30 days of their agreement's reduction to writing.

Section 22:1892.2 establishes penalties for violating § 22:1892(I). The very first clause of § 22:1892.2, subsection (A)(1), reads, "An insurer shall not violate any provision of [§ 22:1892(I)]." Again, Louisiana Realty alleges AXIS, an insurer, violated § 22:1892(I) by delaying payment of the settlement. The penalty for a violation of Subsection A (that is, a violation of § 22:1892(I)) is found in Subsection B:

> Failure to comply with Subsection A of this Section, when the failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty payable to the insured, in addition to the amount of loss, of only the greater of fifty percent of the amount found to be due from the insurer to the insured . . . or two thousand five hundred dollars, whichever is greater, together with, in either instance, reasonable attorney fees and costs actually incurred.

§ 22:1892.2(B)(1).[24]

But this penalty is qualified. As a "condition precedent" to bringing an action under § 22:1892.2, the insured must give the insurer 60 days' written notice of a violation, known as a "cure period notice." § 22:1892.2(C)(1). The cure period notice requires the insured to provide a "formal written demand providing sufficient notice of the facts and circumstances of the dispute." § 22:1892.2(C)(2). If the insurer pays the full amount due within 60 days after receiving a cure period notice, including any expenses incurred and attorney's fees not to exceed 20% of the amount due, "there shall be no further cause of action pursuant to [§ 22:1892.2] regarding that noticed demand." § 22:1892.2(C)(3).

---

[24] The penalty provisions discussed throughout this Order apply only when the insurer's failure to make payment within 30 days is deemed "arbitrary, capricious, or without probable cause." *See* §§ 22:1892.2(B)(1); 22:1892(I)(1)(a); 22:1892(B)(1)(a). Louisiana Realty's complaint does not explicitly allege AXIS acted in a way that was arbitrary, capricious, or without probable cause, and AXIS does not raise a challenge to Louisiana Realty's failure to plead this element. In resolving the instant motion, the Court has not addressed whether this element was sufficiently pleaded.

As recently explained by another section of this Court, "Insurers have a major incentive to 'cure' the alleged violation by paying the amount alleged . . . together with actual expenses and attorney's fees." *Sicilian Foods, LLC v. Atain Specialty Ins. Co.*, No. CV 26-623, 2026 WL 1689928, at *2 (E.D. La. June 11, 2026) (Zainey, J.). If the insurer pays the full amount within 60 days, the insured cannot seek the 50% penalty and has no further cause of action under § 22:1892.2. *Id.*

As alleged here, Louisiana Realty and AXIS entered a written settlement on November 19, 2024. Thirty-eight days later, on December 27, 2024, counsel for Louisiana Realty "forwarded communication" to AXIS to inquire about the status of the settlement funds.[25] Within minutes of sending this communication, Louisiana Realty received a FedEx package containing the settlement checks.[26] While it is unclear whether the December 27 communication would constitute a formal "cure period notice," it stands to reason that the settlement was paid before the expiration of any arguable 60-day cure period. Accordingly, Louisiana Realty has no cause of action and no ability to recover under the penalty provisions of § 22:1892.2.

Louisiana Realty's counterarguments fail to persuade. First, Louisiana Realty argues that the cure period outlined in § 22:1892.2(C) applies only to insurance coverage disputes, whereas here the dispute involves AXIS's untimely payment of a settlement.[27] The statute is not meant to be read so narrowly. By its explicit terms,

---

[25] Louisiana Realty does not plead whether it incurred expenses or attorney fees because of the delay in receiving payment from AXIS, and if so whether it gave notice of these additional expenses and fees in its communication to AXIS on December 27, 2024.

[26] Louisiana Realty's first amended complaint is silent as to whether the checks reflected the full amount of the settlement. AXIS's motion alleges the checks were in full. ECF No. 18-1 at 8.

[27] ECF No. 21 at 4–5.

the cure period is a "condition precedent to bringing an action *pursuant to this Section* [*i.e.*, § 22:1892.2]." § 22:1892.2(C)(1) (emphasis added). While Louisiana Realty seeks to invoke the penalty provisions of § 22:1892.2, it cannot sidestep the qualifying provisions no matter how inconvenient.

Moreover, Louisiana Realty alleges that AXIS has not tendered additional payment since receiving Louisiana Realty's December 30, 2024 letter, which Louisiana Realty attaches to its response brief.[28] For starters, the Court will not consider this letter in assessing the motion to dismiss. In resolving a Rule 12(b)(6) motion, the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Court may rely only on material beyond the pleadings without converting the motion into one for summary judgment under limited exceptions. *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). Under the doctrine of incorporation by reference, the Court may consider a document attached to the Rule 12(b)(6) motion if it is (1) referred to in the complaint and (2) central to the plaintiff's claim. Fed. R. Civ. P. 10(c); *Collins*, 224 F.3d at 498–99. Going beyond the pleadings is otherwise in error. *George*, 36 F.4th at 619. Here, the December 30 letter is neither referenced in the complaint nor central to Louisiana Realty's claim, so the Court will not consider it. Even so, Louisiana Realty fails to clarify how the letter is relevant when AXIS had already remitted payment on the settlement—thus, curing the breach—three days before the letter was sent.

---

[28] ECF No. 21 at 5; ECF No. 21-1.

Because Louisiana Realty cannot recover under § 22:1892.2, its claim for relief under that provision must be dismissed.

**B. § 22:1892(B)(1) does not apply to late-payment of settlement agreements, nor would it apply in this case because the payment involved a "catastrophic loss" arising under an insurance policy for immovable property.**

Louisiana Realty also seeks relief under the penalty provision of § 22:1892(B)(1)(a). But this subsection does not apply for two reasons. First, this subsection establishes penalties when an insurer fails to timely adjust or settle claims, not when an insurer fails to timely pay out the settlement of a lawsuit. Second, even if this subsection were construed to cover delayed payment of legal settlements, in this case the delayed payment arose out of a claim of catastrophic loss to immovable property, the penalties for which manifest under § 22:1892.2 and not § 22:1892(B)(1)(a).

The portions of § 22:1892 relevant to this inquiry are:

> A.(1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
>
> (4) All insurers shall make a written offer to settle any property damage claim . . . within the applicable number of days after receipt of satisfactory proofs of loss of that claim[.]
>
> B.(1)(a) Except as provided in Subparagraph (b) of this Paragraph, failure to make payment within thirty days after receipt of satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make the payment within thirty days after written agreement or settlement when the failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in

> addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, plus any proven economic damages sustained as a result of the breach, or one thousand dollars, whichever is greater, payable to the insured, . . . as well as, in either instance, reasonable attorney fees and costs[.]
>
> (b) In the case of a catastrophic loss, any penalty for payment and adjustment of a first-party claim arising under an insurance policy for immovable property shall be subject to penalty pursuant to the provisions of R.S. 22:1892.2, and the provisions of this Paragraph shall not apply.

Under these subsections, the Louisiana Legislature mandates the timely payment and adjustment of property insurance claims. The question is whether these subsections also mandate the timely payment of litigation settlements arising out of insurance claims.

AXIS argues it does not.[29] AXIS claims that recovery under § 22:1892(B)(1)(a) is foreclosed in the case of an insurer's untimely payment of a litigation settlement. Indeed, in *Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.*, a 2012 Louisiana Supreme Court case cited by AXIS, the court held that penalties for alleged late settlement payments are not available under § 22:1892(B)(1)(A). 2012-0588 (La. 10/16/12), 100 So. 3d 324. In that case, the court found that § 22:1892(A)(1) obligates an insurer to timely pay the amount of a claim after receiving satisfactory "proof of loss," and that § 22:1892(B)(1) prescribes penalties for breach of that obligation. *Id.* at 328. But according to the court a settlement agreement is not a "proof of loss," nor is it an insurance "claim" arising under a contract of insurance. *Id.* at 330–31. Rather, a settlement agreement is a separate compromise resolving a dispute over an

[29] ECF Nos. 18, 25.

insurance claim. *Id.* at 331. The court distinguished between the settlement of an insurance claim, as contemplated by § 22:1892(B)(1)(a), and a settlement agreement resolving a dispute over the insurance claim, which falls outside of § 22:1892(B)(1)(a). *Id*. The court concluded that the proper statute to assess penalties for untimely payment of settlement agreements is § 22:1973. 100 So. 3d at 331. *Accord Joli D Props. LLC v. Underwriters at Lloyds London*, No. 2:21-CV-04462, 2022 WL 1150862, at *3 (W.D. La. Apr. 18, 2022) (finding that the court in *Katie Realty* performed "a complete and comprehensive analysis of the interpretation of the relevant statutory provisions" and agreeing that the proper statute for assessing penalties for untimely settlement payments is § 22:1973). As noted previously, § 22:1973 was repealed and has been incorporated into § 22:1892(I). Thus, Louisiana Realty gets no relief under the penalty provision in § 22:1892(B)(1)(a); its only relief would come from § 22:1892(I) and § 22:1892.2, which does not apply, as the Court discussed *supra* Section III.A.[30]

But Louisiana Realty's reliance on § 22:1892(B)(1) is misplaced for another reason. Even if the subsection applied to late-payment of settlement agreements, it would be inapplicable here because this case involves a settlement of a claim alleging "catastrophic loss" arising under an insurance policy for immovable property. In such

[30] The pre-2024 version of § 22:1892(B)(1)(A) discussed in *Katie Realty* is similar but not identical to the current version of the statute. Louisiana Realty does not argue whether the holding in *Katie Realty*—a case cited repeatedly by AXIS in its briefing—survives any changes to the statute. In fact, Louisiana Realty's briefing does not mention *Katie Realty* at all. Even so, this Court finds that the relatively minor modifications to § 22:1892(B)(1)(A) do not change the meaning of the statute and have no bearing on the Louisiana Supreme Court's interpretation of its scope.

cases, according to the plain language of § 22:1892(B)(1)(b), the penalty provisions of § 22:1892.2 apply, not the penalty set forth in § 22:1892(B)(1)(a).

As discussed, § 22:1892(B)(1)(a) applies when an insurer "fail[s] to make the payment within thirty days after written agreement or settlement when the failure is found to be arbitrary, capricious, or without probable cause[.]" § 22:1892(B)(1)(a). This provision is subject to an exception: § 22:1892(B)(1)(b) makes explicit that its own penalty provisions do not apply to payments arising out of a claim for catastrophic loss. "In the case of a catastrophic loss, any penalty for payment and adjustment of a first-party claim arising under an insurance policy for immovable property shall be subject to penalty pursuant to the provisions of R.S. 22:1892.2, and the provisions of this Paragraph shall not apply." § 22:1892(B)(1)(b).

A "catastrophic loss" is defined as "a loss that arose from a natural disaster, windstorm, or significant weather-related event that was a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster." § 22:1892(B)(1)(c)(i). Louisiana Realty repeatedly asserts in the first amended complaint that its properties suffered "catastrophic" damages and loss.[31] Even though the complaint does not specifically allege that the loss meets the definition of "catastrophic loss" in § 22:1892(B)(1)(c)(i)—*i.e.*, a loss from "a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster"—the Court infers that Louisiana Realty claims catastrophic loss in this case. Because Louisiana Realty's claim for relief is based on a late settlement payment arising out

[31] ECF No. 17 ¶¶ 6, 15, 20.

of a claim of catastrophic loss, § 1892(B)(1) does not apply. *See 3612 Edenborn, LLC v. Chaucer Ins. Co. DAC*, No. CV 25-2039, 2026 WL 820376, at *3 (E.D. La. Mar. 25, 2026) (Morgan, J.) (finding that because the plaintiff seeks damages for catastrophic loss, the provisions of § 22:1892 do not apply and § 22:1892.2 governs the plaintiff's claims); *Lumar v. Allied Tr. Ins. Co.*, No. CV 25-1264, 2025 WL 2792217, at *3 (E.D. La. Oct. 1, 2025) (Fallon, J.) (finding that "claims for penalties in the event of a 'catastrophic loss' will be subject to the provisions of La. R.S. § 22:1892.2, whereas all other penalties claims will be governed by La. R.S. § 22:1892"), *reconsideration denied*, No. CV 25-1264, 2025 WL 3140263 (E.D. La. Nov. 10, 2025). Section 22:1892.2, as triggered by a violation of § 22:1892(I), would be the applicable penalty provision under the circumstances.

**C. § 22:1892(I)(1)(a) applies only to "claims not involving loss to an insured's immovable property," which is not the case here.**

In support of its motion to dismiss, AXIS suggests the potential applicability of a third penalty provision. Under § 22:1892(I)(1)(a), an insurer that fails to pay settlement within 30 days of written settlement agreement "may be awarded penalties in an amount not to exceed fifty percent of the damages sustained or five thousand dollars, whichever is greater," along with fees and costs. According to AXIS, this provision would cap Louisiana Realty's recovery at $5,000 because Louisiana Realty would be unable to prove it sustained *damages* due to AXIS's tardiness in making payment.[32]

[32] Unlike § 22:1892(I)(1)(a), the provisions of § 22:1892.2 and § 22:1892(B)(1)(a) allow an insured to collect 50% of the amount *due from the insurer to the insured*, without requiring the insured to prove it sustained damages due to the late payment.

Louisiana Realty's first amended complaint does not seek relief under the penalty provision of § 22:1892(I)(1)(a). Even so, by its plain terms, this provision only applies to "claims not involving loss to an insured's immovable property." § 22:1892(I)(1)(a). Here, the Court infers Louisiana Realty to be asserting an entitlement to penalties derived from a settlement involving immovable property. Immovable property is defined as "a tract of land with its component part, including a factory-built or modular home." § 22:1892(B)(1)(c)(ii). Louisiana Realty does not allege in the first amended complaint whether the property at issue in this dispute is immovable property. But the first amended complaint lists street addresses for eight properties in Houma that were insured by AXIS under the policy at issue—suggesting the policy covered "tract[s] of land with its component part." Moreover, during oral argument on AXIS's first motion to dismiss the original petition, counsel for Louisiana Realty informed the Court that the properties were, in fact, "immovable property." Because Louisiana Realty is not asserting "claims not involving loss to an insured's immovable property," the penalty provision of § 22:1892(I)(1)(a) does not apply.

## IV. CONCLUSION

In summary, because Louisiana Realty alleges AXIS did not pay out its written settlement within 30 days; the only penalty statute applicable to this type of claim is § 22:1892.2; that statute contains a condition precedent, which requires an insured give an insurer a 60-day cure period after notice of the violation; and AXIS paid the settlement minutes after Louisiana Realty reached out to inquire about the status of

payment, Louisiana Realty has no grounds for relief under the facts as alleged. Accordingly,

**IT IS ORDERED** that AXIS's motion to dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Louisiana Realty's complaint is **DISMISSED** without prejudice to its right to move for leave to amend its complaint, which must be filed within 14 days of today's date, and in so moving Louisiana Realty must allege facts that plead a plausible claim for relief in light of the Court's interpretation of the applicable statutory provisions outlined herein.

New Orleans, Louisiana, this 30th day of September, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE